IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FILED**
MAR 29 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

SHEILA JOLLY, )
)
    **Plaintiff,** )
)
vs. ) Civil Action No: CV-00-B-2864-S
)
HEALTHSOUTH CORPORATION, )
)
    **Defendant.** )

**ENTERED**
APR - 1 2002

## MEMORANDUM OPINION

    Before the court is Defendant HealthSouth Corporation's Motion for Summary Judgment. Upon review of the record, the submissions of the parties, the arguments of counsel, and relevant case law, the court is of the opinion that defendant's motion is due to be granted.[1]

    This action arises out of an employment dispute. Sheila Jolly ("Plaintiff") claims that her current employer, HealthSouth Corporation, discriminated against her on the basis of her race and retaliated against her for complaints of discrimination in violation of 42 U.S.C. § 1981. Although plaintiff originally asserted multiple claims of discrimination and retaliation relating to various work-related actions or events, she has now limited her claims, both in her pleadings and in open court, to three challenged events. Plaintiff's current claims are that HealthSouth retaliated against her by issuing her a write-up, transferring her to a different unit, and by failing to pay her a charge

---

[1]At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court and required that counsel send a copy of the proposed opinion to counsel for plaintiff. The court has made only minor changes to the opinion prepared by defendant's counsel. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome, and counsel drafted the opinion according to the express instructions of the court as to its contents. Although the court has chosen to adopt the thorough and well-written opinion of defendant's counsel, the court personally reviewed this opinion and the opinion reflects the court's own conclusions.



premium. Plaintiff also claims that she was denied the charge premium in an attempt to discriminate against her on the basis of her race. The court finds that HealthSouth is due judgment as a matter of law with respect to all these remaining claims.[2]

## FACTUAL SUMMARY

Plaintiff has been employed by HealthSouth since 1996 as a licensed practical nurse ("LPN") at its Lakeshore Rehabilitation Hospital (the "Hospital"). This Hospital is a 100 bed facility dedicated to providing physical rehabilitation services for patients suffering from various neurological or orthopedic injuries. The facility is divided between a Hospital unit and a separate Transitional Living ("TL") unit. The TL unit is designed for patients who have been discharged from the Hospital but are still in need of some supervision and/or care before they can transition home or to a nursing home facility.

Plaintiff began working with HealthSouth in 1996 as a flexi-pool, or as-needed, LPN. Plaintiff became a regular, full time LPN in March 1998 and was assigned to the Hospital's orthopedic unit (referred to as "2 East"). Plaintiff claims that on several occasions during the summer of 1999, her supervisor, Chrin, the charge nurse on 2 East, assigned her a heavier patient and/or work load than three Caucasian substitute nurses. Plaintiff complained about the inequity in job assignments and claimed that Chrin was assigning her a heavier load on the basis of her race.[3] In late 1999, Dan Johnson, the Director of Patient Care Services, asked plaintiff to "do him a favor" and transfer to the TL unit. Johnson wanted to reassign plaintiff because he needed a "stronger nurse" in the TL unit. Plaintiff was reassigned from 2 East to the TL unit in January 2000. After

---

[2] Even if plaintiff had not abandoned the other claims asserted in her Complaint, the court is persuaded by the arguments presented in Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment that these claims should likewise be dismissed through summary judgment.

[3] In support of its motion for summary judgment, the Hospital presented evidence comparing all of the patient assignments for the relevant individuals during the alleged discriminatory period. This evidence demonstrated that plaintiff actually had less patients assigned to her than her alleged comparators. Plaintiff has since abandoned her claim relating to the alleged discriminatory assignments.

2

transferring to TL, plaintiff continued to work in her same capacity as an LPN on the 3-11, or second shift.[4]

Approximately a year after her transfer, in February 2001, Pam Bentley, the House Supervisor, asked plaintiff to perform the midnight census in the TL unit. Plaintiff declined to conduct the census and informed the House Supervisor that she would ask the next shift to perform the census. Bentley became upset with plaintiff's response. Thereafter, plaintiff was written up for insubordination relating to the incident by Sarah Williamson, the Supervisor of Nursing. Plaintiff explained to Williamson why she felt she had not been insubordinate during the incident. After hearing plaintiff's account, Williamson reduced the written warning to a written counseling.

## SUMMARY JUDGMENT STANDARD

Under the Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of his case on which she bears the

---

[4]Most TL patients are undergoing therapy during the first shift (7-3), in their rooms for supper and medication during the second shift (3-11) and asleep during the third shift (11-7). As a result, the first two shifts are staffed by an LPN and several techs while the 3rd shift is staffed with only techs. Plaintiff ultimately replaced Carolyn Hollenquest as the second shift LPN in the TL unit.

ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.

Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.*

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 (1893). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsuchita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communications, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighting of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

A.   **Plaintiff's Claims**

Plaintiff contends that HealthSouth retaliated against her by issuing her a written counseling in February 2001 and by transferring or reassigning her to the TL unit in January 2000. Plaintiff also claims that HealthSouth both retaliated and discriminated against her on the basis of her race and her prior complaints by failing to pay her a charge premium for shifts worked in the TL unit.[5] HealthSouth counters that these events do not rise to the level of adverse employment actions, that they are not causally related to any protected activity and/or that plaintiff cannot present any evidence that the legitimate non-retaliatory and non-discriminatory reasons articulated for these actions are pretextual.

---

[5]Plaintiff originally claimed that after defendant transferred her to the TL unit it also discriminated and/or retaliated against her by asking her to float back to the Hospital for weekend shifts. Defendant presented persuasive arguments in support of dismissing this claim. Plaintiff failed to respond to defendant's arguments in her brief and confirmed at oral argument that she had abandoned this claim. Even if plaintiff had pursued this claim, the court is persuaded that summary judgment is due Defendant for the reasons outlined in Defendant's original Memorandum of Law in Support of Motion for Summary Judgment.

B.  **Legal Standard**

To establish a prima facie case of retaliation under 42 U.S.C.§ 1981,[6] plaintiff must show that (1) she engaged in protected expression, (2) she suffered a subsequent adverse employment action, and (3) there is a causal link between the two. *See Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001); *Gupta v. Fl. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999).

To establish the causal connection element, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs.,Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (*quoting Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). "In order to show that the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecom., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). *See also Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997)("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression . . . .").

To establish a prima facie case[7] of race-based disparate treatment, plaintiff must show (1) she belongs to a protected class; (2) she was subject to an adverse job action; (3) her employer treated similarly situated employees outside of her class more favorably, and (4) she was qualified to perform her job. *Crapp v. City of Miami Beach*, 242 F.3d 1017 (11th Cir. 2001); *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836 (11th Cir. 2001); *EEOC v. Joe's Stone Crab Inc.*, 220 F.3d 1263 (11th Cir. 2000).

---

[6] The same Title VII analysis applies to claims of retaliation made pursuant to 42 U.S.C. §1981. *Howard v. BP Oil Co.*, 32 F.3d 520, 524 n.4 (11th Cir. 1994).

[7] Plaintiff did not present any direct evidence of discrimination or retaliation in this case and therefore must attempt to prove her claims through circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To qualify as an adverse employment action for purposes of a discrimination or retaliation claim, the challenged action must reach a certain threshold of substantiality. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Fl. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality . . . to be cognizable under the anti-retaliation clause. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). The actions at issue must be "'objectively serious and tangible enough' to alter [plaintiff's] 'compensation, terms, conditions, or privileges of employment, deprive . . . her of employment opportunities or adversely affects. . .her status as an employee.'" *Gupta*, 212 F.3d at 588 (*quoting Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997)); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)("We therefore hold that, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment.").

If plaintiff establishes a prima facie case of discrimination or retaliation, defendant must produce a legitimate, non-retaliatory reason for its action. *Gupta*, 212 F.3d at 590. Plaintiff must then show that the employer's proffered reason is pretextual. *Id.*

**C.    Analysis**

    **a.    Plaintiff's Written Counseling**

Plaintiff argues that the written counseling she received in February 2001 was in retaliation for her complaints of discriminatory treatment at HealthSouth. Defendant has argued, and the court agrees, that this written counseling does not reach the requisite threshold of substantiality necessary to qualify as an adverse employment action. *Davis v. Town of Lake Park, Fl.*, 245 F.3d 1232, 1240

7

(11th Cir. 2001)(written counseling memoranda, which did not result in any tangible consequences in the form of loss of pay or benefits or further discipline, did not constitute adverse employment action); *Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999)(write-up which expressed concern and warned of possible consequences did not meet "threshold level of substantiality"); *Merriweather v. Ala. Dept. of Pub. Safety*, 17 F.Supp.2d 1260, 1275 (M.D. Ala. 1998) *aff'd* 199 F.3d 433 (11th Cir. 1999) ("Merriweather has not alleged that this written counseling has had any adverse impact on her employment. She has not produced any evidence to support that she has been fired, demoted, or denied any pay increase because of the counseling . . . . This court therefore finds that the written counseling does not constitute adverse employment action, and that Merriweather has failed to state a prima facie case of retaliation based upon the written counseling.").

      Plaintiff characterizes the write-up as a "reprimand" and argues that it is sufficiently material because it was the first step in Defendant's progressive disciplinary process. Plaintiff concedes, however, that this "reprimand" was reduced to a written counseling. Written counseling is not considered by the Hospital to be disciplinary in nature. (Smith Dec. ¶ 6). In addition, there is no evidence that this counseling later served as the basis for any disciplinary or other adverse action. Even assuming this counseling was an initial step in a progressive disciplinary process, it did not have any tangible adverse effect, much less a "serious and material" effect, on plaintiff's employment. *See Davis v. Town of Lake Park, Fl.*, 245 F.3d 1232, 1239 (11th Cir. 2001). "Congress simply did not intend for Title VII to be implicated where so comparatively little is at stake." *Davis*, 245 F.3d at 1240. Courts are not in the business of reviewing, much less second-guessing, every employer's attempt to correct or counsel workplace conduct. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997) (holding that reprimands could not serve as the basis for a retaliation claim, "[o]therwise, minor and even trivial employment actions that 'an

8

irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'") (citation omitted); *Davis*, 245 F.3d at 1241 ("First, courts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action . . . .").

Although unnecessary for the court's disposition, defendant also correctly argues that plaintiff has failed to present sufficient evidence of a causal connection between the written counseling and any prior alleged complaints of discrimination. Plaintiff testified she was not aware of any evidence relating the two events. (Plaintiff Depo. 535). In addition, the counseling was too remote in time to be linked to plaintiff's complaints, which were made approximately a year and a half before the counseling. Plaintiff was unable to present any credible evidence that the reason for the counseling was pretextual. Instead, the evidence reflects that it is the Hospital's practice to at least counsel employees who refuse or decline to perform tasks requested by their supervisors. (Smith Dec. ¶ 6). Although plaintiff disputes that she acted insubordinate when she declined to perform the task requested by the supervisor, defendant could have reasonably interpreted her actions as such. The court finds that plaintiff's claim that the February 2001 written counseling was retaliatory in nature is due to be dismissed.[8]

### b. Plaintiff's Reassignment to the TL Unit

Plaintiff also argues that HealthSouth transferred or reassigned her from the Hospital to the TL unit in an attempt to retaliate against her for her earlier complaints of discrimination. Defendant argues that the reassignment was a lateral change that did not rise to the level of an adverse employment action. The record reflects that after plaintiff transferred to the TL unit, she continued to work in the same position, with the same title, performing virtually the same LPN duties for the

---

[8] Originally Plaintiff asserted a similar claim relating to a "talking to" she received on one occasion from her supervisor after a conflict with a co-worker. Plaintiff has now abandoned this claim. This claim would be due to be dismissed for the same reasons outlined above.

9

same number of hours on the same shift at the same rate of pay. Lateral transfers generally do not qualify as adverse employment actions. *Doe v. DeKalb Co. Sch. Dist.*, 145 F.3d 1441, 1454 (11th Cir. 1998) (citing *Ledergerber v Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) (noting the clear trend of authority that lateral transfers are not an adverse employment action).

Plaintiff argues that she subjectively viewed the reassignment as adverse. However, plaintiff has not presented evidence that the perceived differences between the two units entailed a "serious and material change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239 (emphasis omitted). Further, the evidence reflects that plaintiff had opportunities to transfer back to the Hospital unit if she in fact perceived the TL unit to be less desirable. During the course of her deposition, plaintiff testified that, given the option of transferring back to the Hospital, she would prefer to stay in the TL unit. The court finds that plaintiff's reassignment to the TL unit was not adverse in nature and did not involve a material change in the terms or conditions of plaintiff's employment. Because plaintiff cannot satisfy her prima facie case, her claim is due to be dismissed.

Alternatively, the court finds that there is insufficient evidence on which a reasonable juror could find a causal connection between plaintiff's reassignment and her complaints of discrimination.[9] Plaintiff admits that she has no evidence or information linking her transfer to her prior complaints of discrimination. (Pl. 539-541).

Even assuming a prima facie case, the court finds that plaintiff's claim fails because she has not presented evidence on which a reasonable juror could find that the reason Johnson selected her for this reassignment, *i.e.* the fact that he needed a strong nurse to take charge of that shift in TL, was pretextual.[10] Plaintiff relies upon an affidavit from Ms. Franklin, the Residential Manager at

---

[9] Plaintiff claims she made complaints of discriminatory patient assignments during the summer of 1999. Plaintiff was asked to transfer to the TL unit in December 1999, approximately four months later.

[10] "Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Davis v. Town of Lake Park, Fl.*, 245 F.3d 1232, 1244 (11th Cir. 2001).

TL, that Johnson told her "he was putting someone over on the unit and that this was the last thing before the person being put out the door." Assuming Johnson made this remark, there is no indication to whom Johnson was referring. To the extent this remark concerned plaintiff, the record is clear that Johnson never took any adverse employment action against her (much less put her out the door). Instead, plaintiff continues to work in the TL unit and now prefers to remain in the TL unit rather than transfer back to the Hospital. Plaintiff's claims fail on all of these alternate grounds.

    c.    **Charge Pay Premium**

Plaintiff also contends that the Hospital denied her charge pay for shifts she performed in the TL unit because of her race and/or in retaliation for complaints of discrimination.[11] According to defendant, charge pay has never been available in the TL unit. Instead, charge pay is reserved for the head licensed nurse (usually an RN and only rarely an LPN) who is responsible for supervising a nursing unit in the Hospital. Because the TL unit is not a regulated nursing unit of the Hospital and in fact, does not even require a licensed nurse on each shift, charge pay has never been available for shifts performed in the TL.

Plaintiff argues that this explanation is pretextual because the Hospital's policy relating to charge pay does not expressly exclude the TL unit. Plaintiff contends that regardless of the policy, the better policy would be to pay charge premium in the TL unit as well as in the regulated Hospital units. Relying upon various hearsay testimony, plaintiff also asserts, contrary to the Hospital's position, that charge pay has been paid for shifts worked in the TL. Whether the Hospital has implemented the best policy for the circumstances is not relevant to the court's review. The issue is whether the Hospital failed to pay plaintiff charge pay because of her race or in retaliation for her complaints, rather than because of this longstanding practice.

---

[11] In Plaintiff's Memorandum of Law in Response to Defendant's Motion for Summary Judgment, Plaintiff states "[t]he only disparate treatment claim which the plaintiff retains in this case involves the defendant's failure to compensate her with charge pay . . . ." (Plaintiff's Mem. of Law at p. 23).

11

The evidence is undisputed that no one has ever received charge pay for a shift worked in the TL unit. Plaintiff relies upon hearsay testimony indicating that Eddings, a Caucasian nurse, received charge pay while in TL. However, the Hospital has presented evidence, including payroll records and Eddings own testimony, that shows that Eddings did not receive charge pay for any shift worked in TL. Plaintiff also relies upon a document wherein Edna Williams requested charge pay for a shift performed in TL. However, it is undisputed that Williams's request was denied and she did not receive charge pay for that shift. Accordingly, there is no credible evidence to refute the Hospital's claim that plaintiff was not paid charge pay because of the Hospital's longstanding practice of not paying this premium to any nurse for shifts performed in the TL.

In any event, there is no evidence indicating that plaintiff was denied charge pay because of her race. Rather, the evidence establishes that plaintiff received charge pay for several shifts she worked in the hospital. (DX 8 to Smith Depo). The evidence presented by defendant reflects that Caucasian nurses, including Eddings and Hollenquest, have not been paid charge pay for shifts worked in the TL. The evidence before the court further reflects that charge pay was not paid along racial lines - rather it was uniformly disallowed, regardless of race, for shifts worked in the TL unit.

The evidence does not support plaintiff's contention that she was denied charge pay in the TL in retaliation for her discrimination complaints. The Hospital has demonstrated that all nurses have been uniformly denied charge pay in the TL unit. Plaintiff's predecessor in the TL unit, Hollenquest, did not receive charge pay performing the same job as plaintiff in TL. Furthermore, plaintiff herself received charge pay for shifts worked in the Hospital both before and after her complaints of discrimination.

Plaintiff has failed to present any credible evidence that anyone in TL, regardless of race or protected activity, has ever received charge pay for shifts performed in the TL unit or that the Hospital's asserted reason for not paying her charge pay was pretextual. The court is of the opinion

that this claim is due to be dismissed as a matter of law.

## CONCLUSION

Based upon the foregoing, the court is of the opinion that Defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 29th day of March, 2002.

*/s/ Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
**United States District Court Judge**